UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>GAVIN LITTLE,<br><br>　　　　　Defendant. | 4:19-CR-40009-01-KES<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE<br>FIRST STEP ACT |

Defendant, Gavin Little, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 107. The Office of the Federal Public Defender (FPD) and the United States of America filed a notice designating Little as a low priority case pursuant to the Amended Standing Order 20-06. Docket 108. The FPD docketed a notice of intent not to supplement Little's motion on April 27, 2021. *See* Docket sheet. For the following reasons, the court denies defendant's motion for compassionate release.

**BACKGROUND**

Little pleaded guilty to kidnapping and aiding and abetting in violation of 18 U.S.C. §§ 1201 and 2. Dockets 58, 68. In exchange for his plea, several more serious counts in the indictment were dismissed, including assault resulting in serious bodily injury. *See* Docket 90 at 1, Docket 1. Little admitted he willfully and knowingly kidnapped the victim (KC) by placing KC in the back of the victim's vehicle and driving away with him. Docket 59 at 1. KC was

unconscious at the time because he had been badly assaulted. *Id.* Little kidnapped KC to evade law enforcement and conceal his own and others involvement in the assault. *Id.* Little was 22 years old at the time of the offense. *See* Docket 72 at 2-3.

In the plea agreement, Little stipulated to a base offense level of 32 with a 4-level increase for permanent or life-threatening bodily injury to the victim. Docket 58 at 4. The government agreed to a 3-level downward adjustment for acceptance of responsibility and timely notification. *Id.* A presentence investigation report (PSR) ordered by the court concurred with the parties' sentencing guideline calculation. *See* Docket 72 ¶¶ 21-31, 85. Little's total offense level was 33 and he fell into criminal history category III. *Id.* ¶¶ 31, 48. The resulting sentencing guideline range was 168 months to 210 months of imprisonment. *Id.* ¶ 83.

On November 4 2019, the court sentenced Little to 210 months in custody followed by four years of supervised release. Docket 88, Docket 90 at 2-3. The court explained why a sentence at the high end of the range was justified:

> The Court determined a sentence at the high end of the advisory guideline range was appropriate in light of serious injuries suffered by the victim and the impact the offense had on the victim's children. In addition, the Court determined the defendant was the prime motivating factor in every stage of the assault and kidnapping of the victim.

Docket 90-1 at 4.

Little is incarcerated at FCI Victorville Medium II, a medium-security

correctional institution in Victorville, California. Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last checked May 4, 2021). Little is now 24 years old. *Id.* His anticipated release date is January 17, 2034. *Id.*

In support of his motion, Little argues the conditions of his confinement as a result of the COVID-19 pandemic warrant early release from custody. Docket 107 at 2-3. Little argues the measures taken by the Bureau of Prisons (BOP) since the pandemic started have required him to spend most of 2020 "locked in a cell, sometimes without access to a shower, clean clothes or fresh air." *Id.* at 3. Little states he became anxious and depressed during this time. *Id.* Little also informs the court he contracted COVID-19 in December 2020, and suffered intense physical and mental health consequences. *Id.* He worries about his general health in the future and states he still suffers from symptoms. *Id.*

## DISCUSSION

The court has detailed the governing law and analysis it uses when confronted with a compassionate release motion in many previous orders. *See, e.g., United States v. Dressen,* 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) *summarily aff'd* 2020 WL 9211124 (8th Cir. Oct. 9, 2020); *United States v. Adame,* 4:18-CR-40117-05-KES, 2020 WL 7212096, at *3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon,* 4:12-CR-40017-01-KES, 2020 WL 7029873, at *3 (D.S.D. Nov. 30, 2020).

For current purposes, it is sufficient to note that because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment

3

once it has been imposed[.]" 18 U.S.C. § 3582(c). But Congress made changes to the law through the First Step Act (FSA), which permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. *See* Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018). Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave custody early. 18 U.S.C. § 3582(c)(1)(A)(i). When considering whether to grant a motion for compassionate release the court must consider the § 3553(a) sentencing factors and the applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Little asserts he made a request for compassionate release to the warden and 30 days have elapsed since the request was made. Docket 107 at 3. Because the motion is denied, the court will presume Little satisfied the administrative exhaustion requirement.

I.  **Extraordinary and Compelling Reasons**

The Sentencing Commission was directed by Congress to describe what should be considered "extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). As directed, the Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four categories. USSG § 1B1.13, cmt. n.1(A)-(C) (2018). The four categories pertain

4

to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Bureau of Prisons. USSG § 1B1.13, cmt. n.1(D).

Little's motion does not satisfy any of the categories identified by the Sentencing Commission in USSG § 1B1.13, comment notes 1(A)-(C).  He does not have a terminal illness or a debilitating physical or mental health condition; neither is he of advanced age nor experiencing compelling family circumstances.  Moreover, assuming the court's discretion to consider compassionate release under the "catch-all category" is at least as broad as the policy statement of the Sentencing Commission, Little has not demonstrated that other extraordinary and compelling reasons exist to warrant his early release.

Little is a young man with a history of mental health conditions. *See* Docket 72 ¶¶ 63-67. He has a history of substance abuse and started consuming alcohol to the point of intoxication at age 13. *Id.* ¶¶ 68-73. He reported no physical health concerns at the time of his PSR interview. *Id.* ¶ 62. Neither does Little's motion indicate he suffers from any physical health conditions except his recent course of COVID-19. Docket 107 at 3.

The COVID-19 pandemic alone is insufficient to warrant early release. And, in fact, the current status of the COVID-19 pandemic is itself losing

5

persuasiveness. The Bureau of Prisons (BOP) has made significant changes to correctional operations since the pandemic started in early 2020. *See BOP COVID-19 Modified Operations Plan,* https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 4, 2021).  These include sanitary and safety measures, restrictions on movement, and visitation restrictions, among others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *See Frequently Asked Questions regarding potential inmate home confinement in response to the COVID-19 pandemic,* https://www.bop.gov/coronavirus/faq.jsp (last visited May 4, 2021).  Since March 26, 2020 to the present, 25,131 inmates have been placed in home confinement. *Id.* These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduces the strain on BOP resources.

As of May 6, 2021, there are no active COVID-19 cases among inmates at FCI Victorville Medium II.[1] *See BOP: COVID-19 Update,* Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 7, 2021). One inmate death has been reported from COVID-19 at FCI Victorville Medium II, and 473 inmates and 56 staff have recovered. *Id.* The total population at FCI Victorville Medium II is currently 1,258 persons. *See* https://www.bop.gov/locations/institutions/vvm/ (last visited May 7, 2021). The reported information

---

[1] Nationwide there are currently 121 federal inmates with confirmed positive test results for COVID-19, which represents a drastic reduction from a year ago. *See BOP: COVID-19 Update,* Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 7, 2021).

demonstrates COVID-19 was widespread at FCI Victorville Medium II, but not devastating. This persuades the court that FCI Victorville Medium II has acted appropriately to treat inmates who contracted COVID-19. The court believes the facility will continue to appropriately treat inmates who do so.

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this late stage of the COVID-19 pandemic. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited May 5, 2021). As of May 6, 2021, 164,598 doses had been administered systemwide. *Id.* At Victorville FCC complex, 384 staff and 985 inmates have been fully vaccinated. *See Learn More About Vaccinations and View Individual Facility Stats*, https://www.bop.gov/coronavirus/ (last visited May 5, 2021). According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

*Id.*

On April 15, 2021, the BOP Director testified to the Judiciary Committee of the Senate and estimated the BOP will have offered a vaccine to every inmate in its custody by the middle of May 2021. *Statement of Michael D. Carvajal Director Fed. Bureau of Prisons,* Comm. on the Judiciary,

7

https://www.judiciary.senate.gov/download/michael-carvajal-testimony- (last visited May 4, 2021).

The potential risk of reinfection is also becoming clarified. The CDC indicates, "[c]ases of reinfection with COVID-19 have been reported, but remain rare." https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (updated Oct. 27, 2020) (last visited May 4, 2021). There is a growing consensus that "[p]eople who have had evidence of a prior infection with SARS-CoV-2, the virus that causes COVID-19, appear to be well protected against being reinfected with the virus, at least for a few months." *See NCI study finds that people with SARS-CoV-2 Antibodies may have a low risk of future infection,* Nat'l Cancer Inst., https://www.cancer.gov/news-events/press-releases/2021/sars-cov-2-antibodies-protect-from-reinfection (dated Feb. 24, 2021) (last visited May 4, 2021).

In light of the above, the court finds Little's current circumstances do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling" reasons under 18 U.S.C. § 3582(c)(1)(A)(i).

## II.   Sentencing Factors of § 3553(a)

But even more importantly, the court's evaluation of the 18 U.S.C. § 3553(a) factors indicate compassionate release is not warranted.

Little was involved in a brutal assault that left the victim with short term memory loss, loss of vision on the right side, and constant tingling in his right hand and leg. *See* Docket 86. He is no longer able to engage in the activities he once enjoyed. *Id.* The victim's injuries have also negatively impacted his

8

children and his ability to support them. *Id.* In return, Little has served only a small fraction of the sentence imposed for his offense.

The court's sentencing decision here was made with care, considering the nature of Little's offense, his history and characteristics, and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from other crimes by the defendant. *See* 18 U.S.C. § 3553(a)(1)-(2). The court believes Little's long sentence will also provide him with needed education, vocational training, and other correctional treatment. *See id.* After careful consideration of his motion, the court concludes Little's sentence of 210 months in custody continues to be appropriate for the seriousness of the offense to which he pleaded guilty.

## CONCLUSION

Little has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion compassionate release under the First Step Act (Docket 107) is denied.

Dated May 7, 2021.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE